1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                          )
SHELLI CALDWELL,                            )
                                                          )          No. C09-1332RSL
                                   Plaintiff,          )
                                                          )
              v.                                         )
                                                          )          ORDER GRANTING CITY
KENNETH BROWN, *et al.*,                )          DEFENDANTS' MOTION FOR
                                                          )          SUMMARY JUDGMENT
                                  Defendants.      )
_____)

         This matter comes before the Court on "Defendants' Motion for Summary

Judgment." Dkt. # 19. Defendants City of Bellingham, Kenneth Brown, and Steve Felmley

seek dismissal of all of the claims against them. Having reviewed the memoranda, declarations,

and exhibits submitted by the parties and having heard the arguments of counsel,[1] the Court

finds as follows:

**A. SUMMARY JUDGMENT STANDARD**

         Summary judgment is appropriate when, viewing the facts in the light most

favorable to the nonmoving party, there is no genuine issue of material fact that would preclude

the entry of judgment as a matter of law. The party seeking summary dismissal of the case

"bears the initial responsibility of informing the district court of the basis for its motion"

_____

         [1] The Court has not considered the first sentence of ¶ 39 of the Declaration of Shelli Caldwell
(Dkt. # 41). Defendants' other evidentiary objections are overruled.

ORDER GRANTING CITY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1   (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of "the

2   pleadings, the discovery and disclosure materials on file, and any affidavits" that show the

3   absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)).  Once the moving party has

4   satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate

5   "specific facts showing that there is a genuine issue for trial."  Celotex Corp., 477 U.S. at 324.

6   "The mere existence of a scintilla of evidence in support of the non-moving party's position is

7   not sufficient," and factual disputes whose resolution would not affect the outcome of the suit

8   are irrelevant to the consideration of a motion for summary judgment.  Arpin v. Santa Clara

9   Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477

10  U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the

11  nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its

12  favor."  Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

13  **B.  42 U.S.C. § 1983**

14          Plaintiffs have asserted claims under the Fourth and Fourteenth Amendments of

15  the United States Constitution.  Section 1983 of the Civil Rights Act of 1964 provides the means

16  to vindicate such claims.  It creates a federal cause of action against any person who, acting

17  under color of state law, deprives another of a right, privilege, or immunity secured by the

18  Constitution or the laws of the United States.  See, e.g., Kildare v. Saenz, 325 F.3d 1078, 1085

19  (9th Cir. 2003).  The statute does not create substantive rights, but merely provides "a method

20  for vindicating federal rights elsewhere conferred."  Graham v. Conner, 490 U.S. 386, 393

21  (1989).

22  **C. DUE PROCESS CLAIMS**

23          **1.  Substantive Due Process -- Fundamental Liberty Interest**

24          The Due Process Clause of the Fourteenth Amendment protects certain individual

25  liberties from state interference, regardless of the process provided, unless the infringement is

26  narrowly tailored to achieve a compelling state interest.  Reno v. Flores, 507 U.S. 292, 301-02

1   (1993).  Plaintiffs claim that their familial relationship is entitled to substantive protection under

2   the Due Process Clause.  They have not identified, and the Court has not found, any case in

3   which a relationship of the type asserted here has garnered constitutional protection.

4           Freedom of personal choice in matters of family life is one of the liberties

5   protected by the Due Process Clause.  Moore v. City of East Cleveland, 431 U.S. 494, 499

6   (1977).  The mere fact of blood relation or even the close personal ties associated with extended

7   family do not, however, give rise to a constitutionally-protected interest.  It is only when

8   extended family members have long-standing custodial relationships and constitute an "existing

9   family unit" that a liberty interest in familial association and integrity arises.  Osborne v. County

10  of Riverside, 385 F. Supp.2d 1048, 1054 (C.D. Cal. 2005) (citing Moore, 431 U.S. at 499;

11  Miller v. California, 355 F.3d 1172, 1176-77 (9th Cir. 2004); Mullins v. State of Oregon, 57

12  F.3d 789, 794 (9th Cir. 1995).

13          The issue is not whether the grandparent-grandchild relationship is entitled to

14  respect and some level of recognition in our society.  As the United States Supreme Court has

15  recognized, grandparents often play an "important role" in the lives of their grandchildren.

16  Troxel v. Granville, 530 U.S. 57, 64 (2000) (plurality opinion).   President Barack Obama, who

17  was largely raised by his grandparents, refers to his grandmother as "the cornerstone of our

18  family."  Donna Butts, Editorial, Wash. Post, Jan. 16, 2010 at A 17.  According to U.S. Census

19  data, 5.8 million American adults over the age of thirty lived with at least one grandchild in

20  2000.  U.S. Dep't of Commerce, U.S. Census Bureau, Census 2000 Brief C2KBR-31,

21  Grandparents Living with Grandchildren: 2000 1 (2003).  By 2008, sixteen percent of

22  Americans were living in multigenerational families.  Sam Roberts, Extended Family

23  Households Are on the Rise, N.Y. Times, Mar. 19, 2010 at A12.  The question is not whether

24  grandparents are important members of the American family:  they are.  Nevertheless, the

25  normal grandparent-grandchild relationship has not garnered constitutional protection under the

26  Due Process Clause.  See, e.g., Mullins, 57 F.3d at 796. The question, then, is whether the

ORDER GRANTING CITY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -3-

relationship between Shelli Caldwell and ZA on August 6, 2008, exceeded the normal

grandparent-grandchild relationship by forming an existing family unit giving rise to a

protectable liberty interest in familial association and integrity.

Even when taken in the light most favorable to plaintiffs, no reasonable factfinder

could conclude that Ms. Caldwell had a long-standing custodial relationship with ZA or that, as

of August 6, 2008, they formed an "existing family unit."  Between 2001 and the day of

Cristina's funeral, ZA lived with Ms. Caldwell for only one month.  The evidence shows that

Ms. Caldwell stepped in periodically to provide shelter, material support, and comfort when

ZA's mother was physically or financially incapable of taking care of him.  There is no

indication, however, that Cristina abandoned her primary role as ZA's custodian or encouraged a

parent-like relationship between ZA and his grandmother.  In February 2008, Cristina

specifically declined to terminate her parental rights or turn custody of ZA over to Ms. Caldwell.

Even after Cristina died on July 29, 2008, ZA did not come live with Ms. Caldwell.  He

remained in the house where he and his mother and her fiancee had lived to minimize the

disruption caused by his mother's death.

"Only those aspects of liberty that we as a society traditionally have protected as

fundamental are included within the substantive protection of the Due Process Clause."  Mullins,

57 F.3d at 793.  The Court must "exercise the utmost care whenever we are asked to break new

ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed

into the policy preferences of [federal judges]."  Brittain v. Hansen, 451 F.3d 982, 990 (9th Cir.

2006) (quoting Washington v. Glucksberg, 521 U.S. 702, 720 (1997)).  The relationship between

Ms. Caldwell and ZA as of August 6, 2008, was that of extended family members, not parent

and child.  Based on the evidence presented, no reasonable factfinder could conclude otherwise.

Because Ms. Caldwell and ZA did not enjoy a long-standing custodial relationship or live as an

existing family unit at any time relevant to this dispute, defendants did not interfere with a

fundamental liberty interest protected by the United States Constitution.

ORDER GRANTING CITY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -4-

1       **2. Substantive Due Process – "Shocks the Conscience"**

2           Plaintiffs argue that defendants' conduct at Cristina's funeral shocks the

3   conscience and therefore constitutes a constitutionally prohibited abuse of government power.

4   Whatever one might think of the decision to execute the custody order at Cristina's funeral or the

5   manner in which it was carried out, it is not enough for plaintiffs to allege conscience-shocking

6   conduct.  "There is no general liberty interest in being free from capricious government action."

7   Nunez v. City of Los Angeles, 147 F.3d 867, 873 (9th Cir. 1998).  In order to establish a

8   constitutional violation under the substantive Due Process Clause, plaintiffs must show that the

9   governmental action deprived them of a protected liberty interest.  Brittain, 451 F.3d at 991.  For

10  the reasons discussed above, they have failed to do so.

11      **3. Procedural Due Process**

12          The Due Process Clause of the Fourteenth Amendment also provides a guarantee

13  that the government will utilize fair procedures in connection with any deprivation of life,

14  liberty, or property.  Unlike the substantive component of the Due Process Clause, procedural

15  Due Process applies to more than just deprivations of fundamental rights:  it protects all liberty

16  interests that are derived from state law or the Due Process Clause itself.  Mullins, 57 F.3d at

17  795.

18          Under Washington law, a *de facto* parent stands in legal parity with biological and

19  adoptive parents.  In re Parentage of L.B., 155 Wn.2d 679, 707-08 (2005).  Thus, before the state

20  can deprive one of his or her role as *de facto* parent, it must provide adequate procedural

21  protections.  No trier of fact could reasonably find that Ms. Caldwell was ZA's *de facto* parent,

22  however, as that term is defined by Washington law.  Id., at 708.  ZA's biological parent never

23  consented to or fostered a parent-child relationship between Ms. Caldwell and ZA, Ms. Caldwell

24  did not reside with ZA for any significant period of time after 2004, and Ms. Caldwell's

25  participation in ZA's upbringing was that of an interim, emergency care giver rather than a

26  parent.  In the absence of a state law liberty interest in the continuation of their relationship,

ORDER GRANTING CITY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -5-

1    plaintiffs' procedural due process claim fails.

2    **D.  UNLAWFUL SEIZURE CLAIMS**

3        **1.  ZA's Right to be Free from Unlawful Seizure**

4            Plaintiffs allege that ZA was "seized without probable cause in violation of his

5    rights under the Fourth and Fourteenth Amendments to the United States Constitution."

6    Complaint at ¶ 5.3.  The only argument offered in support of this claim is that ZA had a

7    constitutionally-protected right to continue his relationship with Ms. Caldwell without

8    government interference.  Opposition at 18.  As discussed above, the constitution affords no

9    protection for the extended family  relationship shared by plaintiffs on August 6, 2008.

10   Defendants possessed a valid court order transferring custody of ZA from Ms. Caldwell to the

11   Allens.  Plaintiffs have not shown that taking control of ZA in order to effectuate that transfer

12   was unlawful or otherwise violated ZA's Fourth Amendment rights.

13       **2.  Ms. Caldwell's Right to be Free of Unlawful Seizure**

14           Plaintiffs argue that, because Ms. Caldwell was ZA's *de facto* parent under

15   Washington law, she could be guilty of custodial interference only if she attempted to conceal

16   ZA from "the other parent."  RCW 9A.40.060(2).  This argument fails because, as of August 6,

17   2008, Ms. Caldwell was not ZA's *de facto* parent.  As a "relative" of ZA, she could be guilty of

18   custodial interference if she retained, detained, or concealed ZA from other persons, such as the

19   Allens, who possessed a lawful right to physical custody.  RCW 9A.40.060(1); RCW

20   9A.40.070(1).

21           Plaintiffs also argue that probable cause was lacking because Ms. Caldwell did not

22   have sufficient knowledge of the temporary custody order to "intend" to deprive the Allens of

23   their lawful right to custody.  State v. Boss, 167 Wn.2d 710, 719-20 (2009).  The evidence does

24   not support plaintiffs' argument.  Probable cause exists if "at the moment of arrest the facts and

25   circumstances within the knowledge of the arresting officers and of which they had reasonably

26   trustworthy information were sufficient to warrant a prudent man in believing that the petitioner

1  had committed or was committing an offense."  United States v. Jensen, 425 F.3d 698, 704 (9th

2  Cir. 2005).  Ms. Caldwell acknowledges that defendant Kingsley told her that she had a court

3  order transferring custody of ZA from Ms. Caldwell to the Allens.  Complaint at ¶ 3.19.  The

4  officers understood that Ms. Caldwell had been told that the court order granted custody to the

5  Allens.  Decl. of Lt. Steve Felmley (Dkt. # 22) at ¶ 11; Decl. of Sgt. Kenneth Brown (Dkt. # 26)

6  at ¶ 13.  Although there is divergent testimony regarding whether Ms. Caldwell was offered a

7  copy of the actual custody order, it is clear that she was aware of the order and its essential

8  terms.  Having learned why defendant Kingsley and the officers were present at the funeral, Ms.

9  Caldwell nevertheless informed the officers that she intended to take ZA home with her.  In

10  these circumstances, defendants had probable cause to believe that Ms. Caldwell was violating

11  RCW 9A.40.070.[2]

12  **E. QUALIFIED IMMUNITY**

13          When a defendant claims qualified immunity from civil damages, plaintiff is

14  required to show that the official has violated "clearly established statutory or constitutional

15  rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800,

16  818 (1982).  In the context of a motion for summary judgment, defendants bear the burden of

17  showing that "a reasonable officer could have believed, in light of the settled law, that he was

18  not violating a constitutional or statutory right."  Gasho v. United States, 39 F.3d 1420, 1438

19  (9th Cir. 1994).  Such is the case here.

20          As noted above, plaintiffs have not shown a violation of any constitutional right.

21  Even if such a violation existed, the rights that were allegedly violated were not clearly

22

23          [2] Plaintiffs' contention that the officers had no reason to believe that Ms. Caldwell intended to
24  hold ZA "permanently or for a protracted period" does not advance their argument.  One can be guilty of
      custodial interference in the second degree without regard to the intended length of the interference.
25  Because the officers had probable cause to believe that Ms. Caldwell was committing custodial
      interference, the Court need not determine whether they also had cause to believe that she was guilty of
26  obstructing a public officer.

ORDER GRANTING CITY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT              -7-

1  established for purposes of the qualified immunity analysis.  "The relevant, dispositive inquiry . .

2  . is whether it would be clear to a reasonable officer that his conduct was unlawful in the

3  situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001).[3]  Given the substantial

4  number of cases in which extended familial relationships have been denied substantive due

5  process protection, the existence of a valid court order directing transfer of custody of ZA to the

6  Allens, and Ms. Caldwell's statements and actions in defiance of that order, reasonable persons

7  in defendants' positions could (and in fact would) have believed that their conduct in this case

8  was lawful.  The defendant officers are, therefore, entitled to qualified immunity.

9  **F. MUNICIPAL LIABILITY**

10          Absent a constitutional violation, there can be no municipal liability under § 1983.

11  Collins v. City of Harker Heights, 503 U.S. 115, 121-24 (1992).

12

13          For all of the foregoing reasons, plaintiffs' claims against defendants Kenneth

14  Brown, Steve Felmley, and the City of Bellingham are DISMISSED.

15

16          Dated this 3rd day of September, 2010.

17

18                              MVٰ S Casnik

19                              Robert S. Lasnik
                                United States District Judge

20

21  _____

22     [3]  In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court established a two-step
    process for considering claims of qualified immunity:  the trial court first had to determine whether
23  defendant's conduct violated a constitutional right before determining whether the constitutional right
    was clearly established at the time of plaintiff's injury.  The sequential analysis was designed to prevent
24  constitutional law from stagnating.  In a recent opinion, the Supreme Court authorized district courts to
    exercise their sound discretion when deciding which of the two prongs of the qualified immunity
25  analysis should be addressed first in light of the circumstances of a particular case.  Pearson v. Callahan,
    __ U.S. __, 129 S.Ct. 808, 821-22 (2009).
26

ORDER GRANTING CITY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -8-